UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS GREVE,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT ACCEPTANCE CORPORATION, et al.,<br><br>Defendants. | Case No. 1:25-cv-13178-AK |

**DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant Credit Acceptance Corporation ("Credit Acceptance") hereby submits its memorandum of law in support of its Motion to Dismiss Plaintiff Thomas Greve's ("Plaintiff") Complaint and to compel arbitration or, in the alternative, to stay this action and compel arbitration pursuant to the Federal Rules of Civil Procedure Rule 12(b)(1) and 9 U.S.C. § 1 *et seq*. of the Federal Arbitration Act ("FAA"). All of Plaintiff's claims against Credit Acceptance arise out of a transaction involving interstate commerce and are subject to a binding arbitration agreement that is governed by the FAA. Plaintiff agreed to the express arbitration clause within the retail installment contract, and such a clause should be honored. Thus, Plaintiff's claims against Credit Acceptance should be dismissed and compelled to arbitration.[1]

[1] Credit Acceptance denies that Plaintiff's claims have any merit to them and expressly reserves all defenses to Plaintiff's claims and does not waive any available defenses.

## FACTUAL BACKGROUND

### I. The Contract and Agreement to Arbitrate.

On 10/30/2021, Plaintiff and Credit Acceptance executed a Retail Installment Contract (the "Contract") for the purchase of a 2011 Hyundai Sonata (the "vehicle") from Cape Cod Carz LLC. *See* **Exhibit A** – *Retail Installment Contract.* According to the Contract, Plaintiff agreed to make 60 monthly payments of $299.92 each, beginning 11/30/2021. *Id.* at 1. Credit Acceptance accepted assignment of the Contract and is designated as an "Assignee" therein.[22] *See id.* at 4.

On page one of the Contract, in bold and capitalized letters, the Contract gives Plaintiff the following conspicuous notice, which alerts Plaintiff to the existence of the Arbitration Clause:

> **ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the agreement to arbitrate. By initialing below, you confirm that you have read, understand and agree to the terms and conditions of the Arbitration Clause.

*See id.* at 1. The mandatory Arbitration Clause, located on Page 5 of the Contract, states in pertinent part:

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. . . .
>
> If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in Court or have a jury resolve that dispute. . . .

[2] On page four, directly above Plaintiff's signature, the Contract states: "NOTICE OF ASSIGNMENT. The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth below on this Contract." *See* Ex. A at 4. On the same page, the Contract further states: "FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title, and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee") . . . ." *Id.*

> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

*Id.* at 5.[33] The Arbitration Clause broadly defines "Dispute" as:

> [A]ny controversy or claim between You and Us **arising out of or in any way related to this Contract**, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, **the purchase, sale, delivery, set-up, quality of the Vehicle**, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

*Id.* (emphasis added).

Plaintiff signed the Contract on 10/30/2021 certifying that he read the Contract before signing, and that they "agree to the terms of this Contract and acknowledge that [they] have received a copy of th[e] Contract with all blanks filled in and that [they] have read it and understand it." *Id.* at 2. Plaintiff also initialed each page of the Contract, including page 5, which contains the mandatory Arbitration Clause. Furthermore, Plaintiff had the absolute right to reject the Arbitration Clause, as set forth in bold-face font on page 5, with no consequence to the remaining terms of the Contract:

> **Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

*Id.* (emphasis in original).

---

[3] As used in the Arbitration Clause specifically and in the Contract generally, the terms "Us" and "We" refer to Cape Cod Carz LLC and its assignee—Credit Acceptance. *See* Ex. A at 1, 5. Thus, it is undisputable that Credit Acceptance is entitled to enforce the Arbitration Clause.

Plaintiff never notified Credit Acceptance of his choice to reject the Arbitration Clause within the thirty-day period, as required under the Contract. Accordingly, Plaintiff has waived his opportunity to reject the Arbitration Clause, and the Arbitration Clause applies.

**II. The Complaint**

Plaintiffs' Complaint brings allegations of RICO violations, conspiracy, fraud, violations of the Truth in Lending Act (15 U.S.C. §1601 *et seq.*) and M.G.L. c. 140D, violations of the Fair Credit Reporting Act 15 U.S.C. § 1681 and M.G.L. c. 93, §§ 50-56, defamation, invasion of privacy, and M.G.L. c. 93A, § 9 against Credit Acceptance for allegedly informing the dealer that they needed to inflate their price in order for Plaintiffs to receive financing.[4] Plaintiffs allege that Credit Acceptance violated c.93A by failing to refrain from fraud or deceit when entering a contract and failing to refrain from breaching its contractual agreement with Plaintiffs. *See* Compl. at ¶ 80. Plaintiffs further allege that Credit Acceptance was negligent and breached their duty of care to Plaintiffs by allowing one of its agents to mislead Plaintiffs by telling the dealership that it could only finance the car sale with an inflated price. Finally, Plaintiffs allege that Credit Acceptance breached the implied covenant of good faith and fair dealing by intentionally misrepresenting the fact that to secure a loan to purchase the vehicle an inflated price was required. As set forth below, Plaintiff is barred from litigating his claims against Credit Acceptance in this Court because all of his claims are subject to the Arbitration Clause.

## LEGAL STANDARD

There is a strong policy in favor of arbitration, which requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA

[4] Plaintiff also alleges eight (8) claims against Cape Cod Carz LLC for issues related to financing the vehicle, mechanical issues arising after the purchase of the vehicle, and Cape Cod Carz LLC repair efforts of the vehicle.

"leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original); *see Proulx v. Brookdale Living Communities Inc.*, 88 F. Supp. 3d 27, 31 (D.R.I. 2015) (same).

Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994) ("[I]f the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a healthy regard for the federal policy favoring arbitration requires that any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration.") (internal quotation marks and citation omitted).

To compel arbitration, a party must demonstrate that a valid agreement exists and that the claims asserted come within the arbitration agreement's scope. *See Proulx*, 88 F. Supp. 3d at 31. If there is any doubt whether a matter is arbitrable, the policy in favor of arbitration "requires that such doubt is resolved in favor of arbitration." *Id.* "A court may dismiss a case where all the issues before it are arbitrable." *Id.*; *see Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) (same). But it is well established that there is strong "federal policy favoring arbitration." *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212 (1995)).

## ARGUMENT

### I. The Federal Arbitration Act Applies and Requires Enforcing the Arbitration Clause

The FAA applies to any arbitration agreement within a contract that involves interstate

commerce in any way. *See* 9 U.S.C. § 2. Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*; *see Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 281 (1995) (explaining that FAA applies to arbitration agreement involving transaction in interstate commerce, even if parties do not contemplate an interstate commerce connection). The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. For a contract to "involv[e]" interstate commerce and therefore fall under the FAA, it need only be shown that the contract "turn[s] out, *in fact*, to have involved interstate commerce." *Allied-Bruce Terminix Cos.*, 513 U.S. at 276, 277 (emphasis in original).

Here, the Contract is governed by the FAA because it meets the "involving commerce" requirement. Plaintiff, at the time he executed the Contract and currently, is a resident of Massachusetts. *See* Compl., ¶ 1; Ex. A, at 1. Credit Acceptance, on the other hand, is a Michigan corporation with its principal place of business in Southfield, Michigan. *See* Compl. ¶ 6.

3. Plaintiff, a Massachusetts resident, agreed to make payments, and made payments to, Credit Acceptance, a Michigan corporation. *See* Ex. A at 4 ("The Seller has assigned this Contract to

Credit Acceptance Corporation . . . You must make all future payments to: Credit Acceptance Corporation, 25505 West Twelve Mile Road-Suite 3000, Southfield, Michigan 48034-8339"). Plaintiff also acknowledged that Credit Acceptance would hold a lien on the vehicle and service his account. *See* **Exhibit B** – *Credit Acceptance Corporation Disclosure Form*. These foregoing facts establish that the Contract involves interstate commerce within the meaning of Section 1 of the FAA. *See, e.g., Roberson v. Money Tree of Ala, Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (interstate commerce found where loans of Alabama borrowers were approved in Georgia and proceeds were wired from Georgia); *First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp.*, 546 F. Supp. 884, 887 (N.D. Atl. 1982) (interstate commerce found because contracts at issue involved services provided by a Delaware corporation to a Georgia broker-dealer).

Furthermore, the Arbitration Clause expressly provides that the Contract "evidences a transaction in interstate commerce" and that it is governed by the FAA. *See* Ex. A at 5. Courts have consistently found such language sufficient to evidence satisfaction of the interstate commerce requirement. *See, e.g., Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause. . .The Arbitration Clause is governed by the Federal Arbitration Act . . . and not by any state arbitration law.'"); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) (finding the contract states that the FAA applies).

Accordingly, the FAA applies to this action because the Contract is one that involves interstate commerce.

## II. The Arbitration Clause is Binding and Enforceable under the FAA

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Thus, a party seeking to compel arbitration under the FAA is only required to demonstrate that "a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within that clause's scope." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011). Further, in deciding whether the parties agreed to arbitrate their disputes, courts should "apply ordinary state-law principles that govern the formation of contracts" and give due regard "to the federal policy favoring arbitration, and ambiguities as to scope of the arbitration clause itself resolved in favor of arbitration." *Id.* at 376 (internal citations and quotations omitted).

Here, it is evident that a valid and enforceable agreement to arbitrate all claims arising out of or related to the Contract exists, and that it includes all the claims against Credit Acceptance pleaded in Plaintiff's Complaint. Plaintiff signed the Contract containing the Arbitration Clause, initialed a disclosure about the Arbitration Clause on page one of the Contract, and he initialed the page containing the Arbitration Clause. *See* Ex. A, at 1, 5. By signing the Contract and initialing every page, Plaintiff averred that he has read, understood, and agreed to the terms of the Contract. In addition, Plaintiff never rejected the Arbitration Clause within the thirty-day period despite the conspicuous notice allowing Plaintiff to do so. *See id.*

Moreover, the terms of the Contract unambiguously state that if one party demands to arbitrate a dispute, the other party does not have the right to pursue their claims in court and must arbitrate any and all claims arising out of the party's contract. *See* Ex. A at 5. As an assignee of the Contract, Credit Acceptance is entitled to (and hereby invokes) its right to enforce the Arbitration Clause. *See* Ex. A at 4 ("The Seller has assigned this Contract to Credit Acceptance Corporation . . ."); *see also, e.g.*, *Barbosa v. Midland Credit Mgmt., Inc.*, No. 18-11997-NMG, 2019 WL 3781629, at *6 (D. Mass. July 3, 2019), *appeal docketed on other grounds*, No. 19-1896 (1st Cir. Sept. 19, 2019) (finding assignee of contract entitled to invoke arbitration clause); *Lance v. Midland Credit Mgmt. Inc.*, 375 F. Supp. 3d 604, 613 (E.D. Pa. 2019) (concluding that assignee could enforce arbitration clause even if the arbitration clause did not specifically extend the right to "successors and assigns").

Plaintiff also executed a Credit Acceptance Corporation Disclosure Form ("Credit Acceptance Disclosure") where he confirms that he has "been given an opportunity to read both sides of the Contract . . . and to ask all questions [he] may have concerning the terms and conditions of the Contract." *See* Ex. B. Because Plaintiff initialed every single page of the Contract and signed the Contract and the Credit Acceptance Disclosure, he is bound by the terms he expressly agreed to. *See Kergald v. Armstrong Transfer Exp. Co.*, 330 Mass. 254, 255 (1953) (Stating "Where what is given to a plaintiff purports on its face to set forth the terms of a contract, the plaintiff, whether he reads it or not, by accepting it assents to its terms, and is bound").

As a valid and enforceable Arbitration Clause exists, it is Plaintiff's burden to challenge the validity of the Arbitration Clause. *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). Here, Plaintiff cannot overcome the validity of the Arbitration

Clause because he voluntarily and knowingly agreed to the Arbitration Clause, and any attempt to avoid the Arbitration Clause is ineffective. Thus, the Arbitration Clause should be enforced.

## **III. The Scope of the Arbitration Clause Encompasses Plaintiff's Claims in this Action**

The FAA mandates that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Because of this strong presumption of arbitrability, courts should not deny an order to compel arbitration unless "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *First Sealord Surety, Inc. v. TLT Constr. Corp.*, 765 F. Supp. 2d 66, 72 (D. Mass. 2010) (quoting *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (stating "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). This presumption is particularly applicable where the arbitration clause at issue is broadly worded and encompasses any claim, dispute or controversy arising out of or relating to the parties' contracts. *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 8 (1st Cir. 2014) (quoting *AT&T Techs., Inc.*, 475 U.S. at 650) (stating "Where the language of an arbitration clause is broad and 'i[]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"); *Granite Rock Co. v. Int'l Brothers of Teamsters*, 561 U.S. 287, 300 (2010) (describing arbitration clause covering "[a]ny claim, dispute or controversy . . . arising from or relating to . . . the validity, enforceability, or scope of . . . the entire Agreement" as broad).

Here, the Arbitration Clause broadly applies to "any controversy or claim between You and Us arising out of or in any way related to this Contract, including . . . the purchase, sale,

delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract." *See* Ex. A at 5. The Arbitration Clause further states that "'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." *Id.* Plaintiff's claims are based on the allegations that Credit Acceptance lied and told an agent of Cape Cod Carz LLC that they had to inflate their vehicle price to receive financing. *See generally* Compl. Plaintiff's claims are directly governed by the Contract – Plaintiff's claims are premised on the "purchase, sale, quality, [and] financing" of the vehicle and all arise out of or relate to this Contract. *See* Ex. A at 5. Other courts have enforced arbitration agreements similar or identical to the one at issue. *See, e.g.*, *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975) (concluding arbitration clause applied to all "contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether the claims are in contract or in tort"); *Highlands WellmontHealth Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003) (holding "'arising out of' [language] is broad enough to encompass a claim of fraudulent inducement of a contract."); *Drywall Sys., Inc. v. ZVI Constr. Co., Inc.*, 435 Mass. 664 (2002) (Stating "A broad arbitration clause includes statutory claims under G.L. c. 93A"). Accordingly, under the terms of the Arbitration Clause, Plaintiff is required to submit his claims to binding arbitration upon Credit Acceptance's demand. *See id.*

## **IV. This Court Should Compel Arbitration and Dismiss or Stay this Case**

Because all of Plaintiff's claims against Credit Acceptance are subject to arbitration, the Court should issue an order compelling arbitration and should dismiss the case against Credit Acceptance for lack of subject matter jurisdiction. *See, e.g.*, *Bercovitch*, 133 F.3d at 156 n. 21 (stating "a court may dismiss, rather than stay, a case when all of the issues before the court are

arbitrable.”); *Choice Hotels Int’l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) (Stating “Notwithstanding the terms of [9 U.S.C. § 3] . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.”). Alternatively, should the Court decide not to dismiss the case, Credit Acceptance requests that the Court stay the case, including discovery, until the completion of the arbitration action. *See* 9 U.S.C. § 3 (requiring courts to stay action where an issue is arbitrable); *see also Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 293 (D. Mass. 2016) (stating “When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration, 9 U.S.C. § 3, or compelling the parties to arbitrate and dismissing the action, 9 U.S.C. § 4.”).

## **CONCLUSION**

The terms of the Contract unequivocally state that if one party demands to arbitrate a dispute, the other party does not have the right to pursue their claims in court, and must arbitrate any and all claims arising out of the parties’ contract. Because all of Plaintiff’s claims against Credit Acceptance arise out of the Contract, Credit Acceptance is entitled to invoke the Arbitration Clause. Accordingly, Credit Acceptance respectfully requests that the Court compel Plaintiff to arbitrate all of his claims against Credit Acceptance and either dismiss this action in its entirety, or in the alternative, stay the action pending arbitration.

[*signature page follows*]

Respectfully submitted,

Credit Acceptance Corporation, by its attorney,

*/s/ Kevin P. Polansky*

Kevin P. Polansky, Esq. (BBO #667229)
kevin.polansky@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
Tel. (617) 217-4700
Fax (617) 217-4710

Dated: March 12, 2026

CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Kevin Polansky*
Kevin Polansky