**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THOMAS GREVE,

*Plaintiff,*

v.

CREDIT ACCEPTANCE CORPORATION, et al.,

*Defendants*.

Case No.: 1:25-cv-13178-AK

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EXEMPTION FROM LOCAL RULE 7.1(a)(2) AND MISCELLANEOUS RELIEF**

Plaintiff Thomas Greve moves this Court for an order exempting him from the requirements of Local Rule 7.1(a)(2). In the alternative, Plaintiff moves for leave to file the Motion for Leave to File an Amended Complaint attached hereto as Exhibit 1 and the instant motion without conferring pursuant to Local Rule 7.1(a)(2). Any attempts to confer with Defendants will undermine the purpose of this Rule, further prejudice Plaintiff, and be inefficient, unduly burdensome, and unlikely to serve a useful purpose.

Plaintiff also moves for an order requiring opposing counsel, when serving a memorandum of law (or other submissions to the court), to provide Plaintiff with copies of cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases.

Plaintiff relies on the attached Declaration of Thomas Greve ("Greve Decl.") in support. For the reasons below, the requested relief is authorized, reasonable, and in the interests of justice.

## I. INTRODUCTION

Local Rule 7.1(a)(2) presupposes adversaries with equivalent institutional capacity. When that presupposition collapses, as it does here between multiple sophisticated defense counsel and an indigent[1] *pro se* plaintiff, the rule becomes a vehicle for procedural gamesmanship rather than a genuine dispute-narrowing mechanism. Defendants have exploited this asymmetry through last-minute notice, improper certifications, and unresponsiveness to Plaintiff's conferral efforts. Plaintiff therefore moves for an order exempting him from Local Rule 7.1(a)(2), or in the alternative, leave to file without conferring, and for an order requiring opposing counsel to provide copies of unpublished or database-exclusive authorities cited in their submissions.

## II. LEGAL STANDARD

Local Rule 7.1(a)(2) provides that "[n]o motion shall be filed unless **counsel** certify that they have conferred and have attempted in good faith to resolve or narrow the issue" (emphasis added). The Court's standing order directed the parties "to confer in good faith to resolve or narrow any issues prior to filing any motion, as set forth in Local Rule[] 7.1(a)(2)." Doc. No. 4, § A.1. That same order, however, expressly reserves the Court's authority to order otherwise "upon motion for good cause shown." Doc. No. 4. Additionally, the "framework for the disposition of motions … may be amended from time to time … as required by the progress of the case." Local Rule 7.1(a)(1).

This Court retains broad discretion to modify or excuse the conferral requirement when its application would be futile, prejudicial, or contrary to the rule's purpose. The touchstone is whether enforcing the rule in the particular circumstances would "foster[] discussion between

[1] The Court granted Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. No. 2, on December 31, 2025. *See* Doc. No. 11 (electronic order).

parties about matters before they come before the court" and "preserve[] scarce judicial resources." *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016). Where conferral would be an empty exercise (or worse, distort the adversarial process), exemption is consistent with the rule's design. *See Mullane v. Morrissey*, No. 1:19-cv-10729 (D. Mass. May 20, 2019), Doc. No. 26 (electronic order) (releasing parties from conferral obligations where rule's application appeared to have the contrary effect).

"In the event that conferral under Local Rule 7.1(a)(2) is attempted in good faith but is unsuccessful, it is incumbent upon [the movant] to bring those circumstances to the court's attention." *Plant v. TD Bank Wealth Mgmt.*, No. 3:18-cv-30145 (D. Mass. Feb. 27, 2019), Doc. No. 20 (electronic order).

## III. <u>ARGUMENT</u>

### The Court Should Exempt Plaintiff from the Requirements of Local Rule 7.1(a)(2) Because All Defendants Have Failed to Comply with the Rule

In conventional litigation between counseled parties, Local Rule 7.1(a)(2) functions as a genuine dispute-narrowing mechanism. Counsel confer, identify areas of agreement, and isolate contested issues; they reduce the burden on the Court. The rule presupposes adversaries with roughly equivalent institutional capacity, including legal training, research tools, time, and staff. When that presupposition collapses, as it does here, the rule does not merely become ineffective; it becomes perverse. Sophisticated defense counsel can satisfy the rule's formal requirements while defeating its substantive purpose. The record in this case demonstrates exactly this phenomenon: defendants provided notice of motions on the eve of filing deadlines, without identifying legal theories or requested relief, and then certified compliance.

This Court has already signaled its awareness of this structural problem. In one recent case, this Court declined to "strictly enforce" Local Rule 7.1(a)(2) against a *pro se* litigant,

noting that the rule requires action by "counsel." *Porter v. Arsenault*, No. 1:24-cv-12878 (D. Mass. Sep. 17, 2025), Doc. No. 61 (electronic order).[2] In another case, this Court went further, releasing both parties from conferral obligations where the rule's application to a *pro se* litigant "appear[ed] to have the contrary effect" of broadening, rather than narrowing, disputes. *Mullane v. Morrissey*, No. 1:19-cv-10729 (D. Mass. May 20, 2019), Doc. No. 26 (electronic order). These orders reflect an implicit recognition that procedural rules must be interpreted against the background of litigant capacity, not merely litigant status.

Defendants have already functionally conceded that meaningful conferral is impossible in this litigation, and that their "certifications" are performative rather than substantive.

***Credit Acceptance Corporation***

Defendant Credit Acceptance Corporation ("CAC") was served with the summons and complaint on February 20, 2026. Doc. No. 20. CAC was required to serve a responsive pleading or Rule 12 motion by March 13, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("defendant must serve an answer … within 21 days after being served with the summons and complaint").

On March 10, 2026, CAC's counsel emailed Plaintiff to inquire about his availability to meet and confer by phone the next day, March 11, regarding "a motion to compel arbitration." Greve Decl., Ex. 2 at 1–2. Plaintiff was not prepared to meet and confer with CAC's counsel on such short notice. Greve Decl., ¶¶ 17–18. Plaintiff informed CAC that he opposes the motion but

---

[2] The local rules of other districts avoid the ambiguity present in D. Mass. Local Rule 7.1(a)(2). In the District of New Hampshire, motions involving an incarcerated *pro se* litigant are exempt from the district's conferral requirement, which otherwise applies to "[a]ny party." D.N.H. Local Rule 7.1(c). In the District of Delaware, civil cases involving *pro se* parties are exempt from the conferral requirement. D. Del. Local Rule 7.1.1. By contrast, the District of Colorado's rule explicitly states that it applies to both counsel and unrepresented parties. *See* D. Colo. Local Civil Rule 7.1(a). In the Southern District of Florida, "the word 'counsel' [is] construed to apply to a party if that party is proceeding pro se." *Merlola Industries, LLC v. Higuertas*, No. 1:23-cv-24346 (S.D. Fla. Oct 20, 2025), Doc. No. 45 (electronic order) (quoting S.D. Fla. Local Rule 1.1). The rules of this district merely provide that "[a]n individual who is not represented by counsel … may … represent himself" and "is required to comply with the[] local rules." D. Mass. Local Rule 83.5.5(a), (d).

did not object to CAC filing a certification that both parties conferred in good faith regarding its anticipated **motion to compel arbitration**. Greve Decl., Ex. 2 at 2.

CAC then filed a tripartite motion seeking an order dismissing all counts against it, pursuant to Fed. R. Civ. P. 12(b)(1), and compelling Plaintiff to arbitrate his claims, pursuant to 9 U.S.C. § 4, or, in the alternative, staying the action, pursuant to 9 U.S.C. § 3. Doc. No. 33; *see also* Mem. in Support, Doc. No. 34. CAC's request to meet and confer does not mention any motion pursuant to Rule 12(b), nor does it mention the alternative relief sought. Greve Decl., Ex. 2 at 1–2. Despite this, CAC's counsel certified that "Plaintiff and [CAC]'s [c]ounsel communicated via email, in an attempt to narrow or resolve the issues herein, and the parties could not resolve or narrow the issues." Doc. No. 33 at 2.

Because CAC failed to disclose the full scope of its motion, Plaintiff could not meaningfully narrow or resolve issues. The "conferral" was therefore notice disguised as negotiation, defeating the purpose of Local Rule 7.1(a)(2).

Though CAC has been generally responsive, none of Plaintiff's efforts to meet and confer have been productive. Greve Decl., ¶¶ 36–37.

***Cape Cod Carz LLC, Richard Gravina Sr., and Richard Gravina Jr.***

On March 3, 2026, Defendant Cape Cod Carz LLC ("CCC") filed a motion to stay pursuant to 9 U.S.C. § 3. Doc. No. 24. On March 3, 2026, Defendants Richard Gravina Sr. ("Gravina Sr.") and Richard Gravina Jr. ("Gravina Jr.") each filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. Nos. 26, 27.[3] CCC's, Gravina Sr.'s and Gravina Jr.'s motions did not include any certificate of compliance with L.R. 7.1(a)(2).

[3] CCC's, Gravina Sr.'s and Gravina Jr.'s motions also failed to comply with L.R. 7.1(b)(1) ("party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted"). *See* Doc. Nos. 24, 26, 27.

Doc. Nos. 24, 26, 27. Indeed, CCC, Gravina Sr., and Gravina Jr. did not contact Plaintiff prior to filing their motions. Greve Decl., ¶¶ 2–4.

Plaintiff and Attorney Seth Roman, counsel for CCC, Gravina Sr., and Gravina Jr., have been attempting to confer regarding multiple prospective motions since March 19, 2026. Greve Decl., Ex. 5. On June 14, 2026, Attorney Roman informed Plaintiff that he was available to confer on the morning of June 18. *Id.* at 4. Plaintiff inquired on June 17 whether Attorney Roman was available at 10:00 AM the following day, June 18. *Ibid.* Attorney Roman then informed Plaintiff that he was scheduled to be in court at that time and could not meet. *Ibid.* Plaintiff has not received any additional communication from Attorney Roman. Greve Decl., ¶ 29.

***Wynn's Extended Care, Inc.***

Defendant Wynn's Extended Care, Inc. ("WEC") was served with the summons and complaint on February 20, 2026. Doc. No. 21. WEC was required to serve a responsive pleading or Rule 12 motion by March 13, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On March 12, 2026, at or about 12:02 PM, Plaintiff received a voicemail message from WEC's counsel seeking to discuss WEC's intent to file a motion to dismiss. Greve Decl., ¶ 19. On March 12, 2026, at or about 12:16 PM, WEC's counsel emailed Plaintiff regarding WEC's intent to file a motion to dismiss. Greve Decl., Ex. 3. Neither the voicemail nor the email mentioned the grounds for the motion or the applicable rule(s) under which it would be brought. Greve Decl., ¶ 20 & Ex. 3. WEC's counsel stated that if Plaintiff did not reply by 4:30 PM that same day, March 12, to advise whether he intends to oppose the motion, WEC "will file the motion and indicate a conference was attempted but no response was received." Greve Decl., Ex. 3.

On March 12, 2026, at or about 5:38 PM, WEC filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 35.[4] WEC's counsel certified that she "emailed … and telephoned Plaintiff on March 12, 2026, in an effort to confer in good faith to resolve or narrow the issue, … [but] ha[s] not received a response from Plaintiff." Doc. No. 35 at 7.

Except to request that Plaintiff include an additional attorney on all communications, WEC's counsel did not respond to Plaintiff's March 19, 2026, email seeking WEC's position regarding a motion to seal Doc. No. 2. Greve Decl., ¶ 24; Greve Decl., Ex. 4 at 3.

***Hyundai Motor America and Hyundai Motor Manufacturing Alabama, LLC***

On March 3, 2026, Defendants Hyundai Motor America and Hyundai Motor Manufacturing Alabama, LLC ("Hyundai Defendants") filed a motion for an extension of time to respond to the complaint. Doc. No. 28.[5] Hyundai Defendants' counsel, Attorney Joseph Muccio III, certified that he "emailed Plaintiff on February 23, 2026 in an effort to confer in good faith to resolve or narrow the issue" but has not received a response. Doc. No. 28, § 7. However, Hyundai Defendants' motion states that Attorney Muccio's firm "has just been retained and is in the process of confirming representation of" Hyundai Defendants. Doc. No. 28, § 4. Further, Plaintiff did not receive any communication from Hyundai Defendants or their counsel regarding Doc. No. 28 before the motion was filed. Greve Decl., ¶¶ 5–15.[6]

---

[4] WEC's motion also failed to comply with L.R. 7.1(b)(1).

[5] Though Hyundai Defendants' motion failed to comply with L.R. 7.1(b)(1), the Court nonetheless granted Hyundai Defendants' request for an extension to March 31, 2026. Doc. No. 44.

[6] Plaintiff did not object to Hyundai Defendants' certification at the time because he genuinely did not oppose the underlying request for a brief extension of time, making the issue appear trivial in isolation. However, this false certification is part of a broader pattern of performative compliance that defeats the substantive, dispute-narrowing purpose of Local Rule 7.1(a)(2).

On March 19, 2026, Plaintiff emailed Hyundai Defendants' counsel seeking Hyundai Defendants' position regarding a motion to seal Doc. No. 2. Greve Decl., Ex. 4 at 1. Hyundai Defendants did not respond to Plaintiff's email. Greve Decl., ¶ 25.

On March 30, 2026, at or about 2:23 PM, Hyundai Defendants' counsel emailed Plaintiff regarding Hyundai Defendants' intent to file a motion to dismiss "[i]n the event [Plaintiff] would like to confer and discuss." Greve Decl., Ex. 6. On March 31, 2026, at or about 5:00 PM, Hyundai Defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 40; *see also* Mem. in Support, Doc. No. 41. Hyundai Defendants' counsel included the following certification:

> On March 30, 2026, the undersigned counsel sent an email to Plaintiff advising of Hyundai Defendants intent to file the instant motion to dismiss in an effort to meet and confer to avoid any unnecessary motion practice. However, the parties did not reach any agreement with respect to the outstanding issues presented in this motion. … Based on the foregoing, I hereby certify that I have attempted in good faith to resolve or narrow the issues raised in this motion.
>
> Doc. No. 40 at 3.

Plaintiff drafted a responsive email on March 31, 2026, but Hyundai Defendants filed Doc. No. 40 before Plaintiff was able to send it. Greve Decl., ¶¶ 32–33 & Ex. 7.

The Local Rule 7.1(a)(2) certifications in Doc. No. 28 and Doc. No. 40 are also technically improper. Local Rule 7.1(a)(2) requires that "**counsel** certify that they have conferred" (emphasis added). In both motions, the certifications are signed by the Hyundai Defendants themselves, not by counsel. Doc. Nos. 28, 40. Because the rule places the certification obligation on counsel—not the party—these certifications do not comply with the rule's plain text.

***Balise Motor Sales Company and Cape Hy, Inc.***

On March 19, 2026, Plaintiff emailed counsel for Balise Motor Sales Company and Cape Hy, Inc. ("Balise Defendants") seeking Balise Defendants' position regarding a motion to seal Doc. No. 2. Greve Decl., Ex. 4 at 1. Balise Defendants asked Plaintiff to advise as to any legal authority regarding his motion to seal Doc. No. 2. *Id.* at 2. Plaintiff replied, citing *In re Boston Herald, Inc.*, 321 F.3d 174, 189–190 (1st Cir. 2003). *Id.* at 4. However, Plaintiff did not receive any subsequent communication from Balise Defendants. Greve Decl., ¶ 26.

**The Court Should Order Defendants to Provide Copies of Unpublished and Database-Exclusive Authorities**

Plaintiff also seeks an order requiring production of unpublished authorities by opposing counsel. If Local Rule 7.1(a)(2) must be calibrated to the reality of *pro se* representation, so too must the conventions of legal citation. A rule that permits counseled parties to cite authorities locked behind paywalls, without providing copies to an indigent opponent, functions as a substantive advantage disguised as a neutral procedural practice. It allows defendants to construct legal arguments that the plaintiff cannot fully evaluate, let alone rebut.

Counseled parties routinely rely on unpublished opinions and database-exclusive authorities available only through Westlaw and LEXIS. Both resources require subscriptions and legal training to navigate efficiently. For a counseled opponent, this poses no problem; opposing counsel can retrieve, read, and respond to the same materials. However, these citations create a barrier for an indigent *pro se* litigant who cannot verify the authority's holding, distinguish its reasoning, or assess its relevance. As the Second Circuit recognized, this practice "hamper[s] the litigants' opportunities to understand and assert their legal rights" and threatens "the appearance of justice" when indigent litigants lack "financial access to case authorities that form the basis of a court's decision." *Lebron v. Sanders*, 557 F.3d 76, 78 (2d Cir. 2009). "The availability to *pro*

*se* indigent litigants of case authorities available only in fee-based electronic databases and other access-limited, fee-based publications like the *Federal Appendix* is an important issue for courts to consider." *Id.* at 79 (emphasis in original); *see also* S.D.N.Y. & E.D.N.Y. Local Civil Rule 7.2 ("counsel must … provide [a] pro se litigant … with copies of cases and other authorities cited … that are unpublished or reported exclusively on computerized databases").

The adversarial system rests on a premise of meaningful participation. *Cf. Bounds v. Smith*, 430 U.S. 817, 828 (1977) (recognizing that "the fundamental constitutional right of access to the courts" requires "adequate law libraries or adequate assistance from persons trained in the law"). That premise is not merely about physical access to a courthouse; it is about epistemic access—the ability to understand the legal terrain on which one's claims are contested. When one party can invoke legal authorities that the other party cannot practically engage, the adversarial process ceases to be a mechanism for truth-finding and becomes instead a mechanism for resource-driven adjudication.

In their motions to date, CAC and Hyundai Defendants cited at least seven (7) opinions available only on the fee-based, electronic databases of Westlaw and LEXIS.[7] Plaintiff is unable to afford a subscription to Westlaw or LEXIS and is unable to search PACER. Greve Decl., ¶¶ 39–40.

Plaintiff requests that the Court enter an order requiring all opposing counsel, when filing any memorandum of law or other submission citing authorities that are unpublished or reported

[7] *See* Doc. No. 34 at 9 (citing *Barbosa v. Midland Credit Mgmt., Inc.*, No. 18-11997-NMG, 2019 WL 3781629, at *6 (D. Mass. July 3, 2019), appeal docketed on other grounds, No. 19-1896 (1st Cir. Sept. 19, 2019)); Doc. No. 41 at 3 (citing *Ivymedia Corporation v. iLIKEBUS, Inc.*, 2015 WL 4254387 (D. Mass. 2015)); *id.* at 4 (citing *Ryan v. Newark Grp., Inc.*, 2025 U.S. Dist. LEXIS 267723 at *19-20 (D. Mass. Dec. 30, 2025)); *id.* at 5 (citing *Three Girls Fishing LLC v. Pan Am. Power Corp.*, 2024 U.S. Dist. LEXIS 142548 at *19 (D. Maine Aug. 12, 2024)); *id.* at 6 (citing *Campbell v. Mass. P'ship for Corr. Health*, 2018 U.S. Dist. LEXIS 4956 at *4-5 (D. Mass. Jan. 11, 2018)); *id.* at 12 (citing *Auctus Fund, LLC v. Players Network, Inc.*, 2021 U.S. Dist. LEXIS 259634 at *16 (D. Mass. Dec. 10, 2021)); Doc. No. 43 at 2 (citing *Schwartz v. HelloFresh SE*, No. 1:25-CV-12222-JEK, 2026 WL 161514, at *3 (D. Mass. Jan. 21, 2026)).

exclusively on computerized databases, to serve upon Plaintiff true and correct copies of those authorities contemporaneously with the filing. This requirement imposes no meaningful burden on Defendants, who already possess these materials and routinely transmit documents electronically. Yet it would restore a measure of adversarial parity that the current practice systematically undermines. The Court's adoption of this modest measure would ensure that Plaintiff can meaningfully evaluate, distinguish, and respond to the legal arguments arrayed against him—protecting not only Plaintiff's right to participate in this litigation, but also the integrity of the adversarial process itself.

**The Court Should Grant the Requested Relief Because Both Measures Restore the Adversarial Balance**

The relief requested here is not a "preference" for *pro se* litigants. It is a corrective measure designed to restore the adversarial balance that procedural rules presuppose. Exempting Plaintiff from Local Rule 7.1(a)(2) does not reward noncompliance; it prevents the rule from being weaponized against a party who lacks the capacity to comply meaningfully. Requiring Defendants to provide copies of unpublished authorities does not impose an undue burden; it merely extends to Plaintiff the same access to legal materials that counseled parties take for granted.

The Court has already taken a step in this direction by ordering the parties to "submit separate proposed schedules" instead of a joint schedule if the parties are unable to confer pursuant to Rule 26(f) and Local Rule 16.1(b). Doc. No. 45, § A. That order recognized, implicitly, that procedural formalism must yield to litigant capacity in complex, multiparty litigation involving an unrepresented party. Plaintiff's requests here ask the Court to apply the same principle consistently. Procedural rules should facilitate, not frustrate, meaningful participation by an indigent *pro se* litigant.

## IV. CONCLUSION

The record in this case demonstrates a consistent pattern: Defendants have treated Local Rule 7.1(a)(2) as a formalistic hurdle to clear rather than a genuine mechanism for dispute resolution. They have falsely certified compliance, provided last-minute notice of motions without disclosing legal theories or requested relief, and ignored or deflected Plaintiff's own efforts to confer. In this context, requiring Plaintiff to continue attempting conferral would not narrow disputes—it would perpetuate an asymmetry that the rule was never designed to create.

The same structural imbalance affects the conventions of legal citation. By invoking authorities locked behind paywalls without providing copies, Defendants construct arguments that Plaintiff cannot fully evaluate or rebut. The two requests before the Court—exemption from Local Rule 7.1(a)(2) and an order requiring production of unpublished authorities—are complementary measures that address a single problem: the distortion of the adversarial process when procedural and informational advantages are systematically deployed against an indigent *pro se* litigant. Neither request seeks special preference; each seeks only to restore the parity that procedural rules presuppose.

For the foregoing reasons, Plaintiff respectfully requests that this Court:

A. grant Plaintiff an exemption from the requirements of Local Rule 7.1(a)(2) or, in the alternative, grant Plaintiff leave to file the Motion for Leave to File an Amended Complaint and the instant motion;

B. enter an order requiring opposing counsel, when serving a memorandum of law (or other submissions to the court), to provide Plaintiff with copies of cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases; and

C. order such other and further relief as the Court deems just and proper.

Dated: July 21, 2026

Respectfully submitted,

THOMAS GREVE

*/s/ Thomas Greve*

Thomas Greve
Plaintiff, *Pro Se*
33 Dover Street
Cranston, RI 02920
401-449-3753
*thomgreve@gmail.com*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: July 21, 2026

Respectfully submitted,

THOMAS GREVE

*/s/ Thomas Greve*

Thomas Greve
Plaintiff, *Pro Se*
33 Dover Street
Cranston, RI 02920
401-449-3753
*thomgreve@gmail.com*