**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS GREVE,<br>*Plaintiff,*<br>v.<br>CREDIT ACCEPTANCE CORPORATION, et al.,<br>*Defendants*. | Case No.: 1:25-cv-13178-AK |

**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR EXEMPTION FROM LOCAL RULE 7.1(a)(2) AND MISCELLANEOUS RELIEF**

Plaintiff Thomas Greve, pursuant to this Court's standing order, Doc. No. 4 at B.3, submits this consolidated reply in support of his motion for an order exempting him from the requirements of Local Rule 7.1(a)(2)[1] and for an order requiring opposing counsel, when serving a memorandum of law (or other submissions to the court), to provide Plaintiff with copies of cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases. *See* Doc. No. 58; Mem. in Support, Doc. No. 59.

Defendants Credit Acceptance Corporation ("CAC"), Hyundai Motor America ("HMA")[2], and Wynn's Extended Care, Inc. ("WEC") each filed a response in opposition to Plaintiff's motion on August 4, 2026. *See* Doc. Nos. 63–65.

[1] In the alternative, Plaintiff moves for leave to file Doc. Nos. 58 and 59-1 without conferring pursuant to Local Rule 7.1(a)(2).

[2] HMA's opposition was filed jointly with Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and Hyundai America Technical Center, Incorporated ("HATC"). Plaintiff voluntarily dismissed without prejudice all claims against HATC on July 18, 2026. Doc. No. 56. HATC therefore lacks standing to oppose this motion, and any arguments attributable to it should be disregarded. Additionally, Plaintiff voluntarily dismissed without prejudice all claims against HMMA on August 11, 2026. Doc. No. 66. Plaintiff further notes that HMA's opposition does not contain proper citations to documents already filed on the Court's electronic docket. *See* Doc. No. 4, § E (ECF

## INTRODUCTION

This case presents a question that reaches beyond the particular disputes between these parties to touch a foundational premise of our civil justice system: that procedural rules exist to facilitate the resolution of substantive claims on the merits, not to become instruments by which institutional advantage is converted into procedural exclusion. Plaintiff, proceeding *pro se* and *in forma pauperis*, asks this Court for two modest procedural accommodations—an exemption from Local Rule 7.1(a)(2)'s conferral requirement and an order directing counsel to provide copies of unpublished or database-exclusive authorities they cite. Neither request seeks preferential treatment. Each seeks only to preserve the adversarial process from a distortion that occurs when formal equality of procedural rules produces substantive inequality of procedural capacity.

"'Access to justice' cannot simply mean that litigants have a right to get into court but are then left to struggle once there." Jefri Wood, *Pro Se Case Management for Nonprisoner Civil Litigation*, Procedural Fairness: Access and Ethics, at 2 (Federal Judicial Center 2016).[3] Though the court's job "does not involve creating a special set of rules for [*pro se*] cases, since everyone must follow the Federal Rules of Civil Procedure," making the process "more transparent [and] more understandable by ordinary people … promotes the court's function of doing justice." *Ibid.*

The Federal Rules of Civil Procedure were designed with the overriding objective of securing "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. That objective assumes litigants who can meaningfully participate. When a *pro se* litigant

---

citations "**shall** be used instead of formats that use the title of the cited document, e.g., the Bluebook format" (emphasis added)). Yet again, HMA has failed to comply with this Court's orders, creating additional work for both Plaintiff and the Court.

[3] Available at https://www.fjc.gov/sites/default/files/2017/Pro_Se_Case_Management_for_Nonprisoner_Civil_Litigation.pdf (last visited Aug. 11, 2026).

confronts multiple counseled defendants in complex multi-party litigation, the presumption of equivalent institutional capacity that underlies rules like Local Rule 7.1(a)(2) collapses. Conferral, intended to narrow disputes and conserve judicial resources, becomes instead a theater of performative compliance—defendants filing certifications of good-faith conferral that bear little resemblance to genuine dialogue, while the plaintiff lacks the tools to verify the authorities marshaled against him. The result is not the efficient administration of justice that Rule 1 envisions, but its opposite: a procedural asymmetry that threatens to render the merits inaccessible.

This Court possesses both the authority and the obligation to prevent that result. Its inherent power to manage its docket and ensure meaningful access to the adversarial process extends to tailoring procedural requirements to the realities of the litigation before it. The relief Plaintiff seeks is narrowly calibrated, imposing a *de minimis* burden on Defendants while addressing a structural impediment that has already demonstrably frustrated the purposes of the rules Defendants invoke. The Court should grant it.

## LEGAL STANDARD

Local Rule 7.1(a)(2) requires good-faith conferral, but the Court retains broad discretion to modify or excuse the requirement upon a showing of good cause. See Doc. No. 4, § A.1. Where conferral is attempted in good faith but unsuccessful, the movant must bring those circumstances to the Court's attention. *Plant v. TD Bank Wealth Mgmt.*, No. 3:18-cv-30145, Doc. No. 20 (D. Mass. Feb. 27, 2019) (electronic order). The touchstone is whether enforcing the rule would foster genuine dispute-narrowing and preserve judicial resources. *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016).

## ARGUMENT

### I. The Court Should Grant Plaintiff an Exemption from Local Rule 7.1(a)(2) Because Conferral Has Been, and Will Continue to Be, Futile

#### A. The Record Demonstrates a Pattern of Performative Compliance by Defendants

CAC provided one day's notice regarding a motion to compel arbitration, without disclosing the full scope of its tripartite motion. Doc. Nos. 59-2, ¶¶ 17–18; 59-3. Defendants Cape Cod Carz LLC, Richard Gravina Sr., and Richard Gravina Jr. filed motions without any prior contact or certification of conferral. *Id.*, ¶¶ 2–4. WEC left a voicemail and sent an email stating an intent to file a motion to dismiss but identifying neither the grounds nor the applicable rule; it then filed the motion at 5:38 PM the same day. Doc. Nos. 59-2, ¶¶ 19–20; 59-4. HMA filed a motion for extension of time and subsequent motion to dismiss; both falsely certified that HMA conferred with Plaintiff. Doc. No. 59-2, ¶¶ 5–15, 32–33. Additionally, in both of HMA's motions, the Local Rule 7.1(a)(2) certification is made by HMA itself, not counsel, in violation of the rule's plain text.

When Plaintiff attempted to confer regarding his own prospective motions (*e.g.*, motion to seal, motion for preliminary injunction), Defendants either failed to respond, deflected, or were persistently unavailable. *See* Doc. Nos. 59-5, 59-6, 59-9.

#### B. Plaintiff Did Not "Refuse" to Confer

Plaintiff clearly states that the email in Exhibit 7 is a draft which was never sent. *See* Doc. Nos. 59-2, ¶ 32–33; 59-8. Furthermore, the language of the draft email, which HMA quotes in its opposition, directly supports Plaintiff's core argument—that HMA has improperly treated the conferral requirement as waivable. HMA's premise that Plaintiff declined conferral is factually false.

### C. The Structural Asymmetry Defeats the Rule's Purpose

Local Rule 7.1(a)(2) presupposes adversaries with equivalent institutional capacity: legal training, research tools, time, and staff. When that presupposition collapses, the rule becomes a vehicle for procedural gamesmanship rather than genuine dispute-narrowing.

This Court has recognized the problem. In *Porter v. Arsenault*, No. 1:24-cv-12878, Doc. No. 61 (D. Mass. Sept. 17, 2025), the Court declined to "strictly enforce" the rule against a *pro se* litigant. In *Mullane v. Morrissey*, No. 1:19-cv-10729, Doc. No. 26 (D. Mass. May 20, 2019) the Court released both parties where conferral appeared to have the "contrary effect" of broadening disputes. Other districts avoid this structural problem by exempting *pro se* parties from conferral requirements altogether. *See*, *e.g.*, D.N.H. L.R. 7.1(c); D. Del. L.R. 7.1.1.

Requiring Plaintiff to continue this empty exercise would not narrow disputes; it would perpetuate an asymmetry the rule was never designed to create.

### D. A Prospective Exemption Is Proper and Necessary

Defendants argue that exemption must be sought motion-by-motion. This ignores the Court's clear authority under its own Standing Order to order otherwise "upon motion for good cause shown." Doc. No. 4, § A.1.

WEC asserts, without citing any authority, that Plaintiff cannot use an "imperfect conferral" to justify a "blanket procedural exemption." Doc. No. 65 at 4. This argument is perfunctory and undeveloped. Under well-established First Circuit law, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *see also Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace" (internal quotation and citation omitted)); L.R. 7.1(b)(2) ("party opposing a motion shall file … a memorandum of reasons, **including**

**citation of supporting authorities**, why the motion should not be granted" (emphasis added)). WEC's claim that Plaintiff "wait[ed] four months," Doc. No. 65 at 4, ignores that Plaintiff has been attempting to navigate complex, multi-party litigation against multiple counseled defendants while proceeding *pro se* and *in forma pauperis*. WEC's own conferral was deficient and its motion to dismiss has remained unopposed precisely because Plaintiff has been attempting to secure the procedural tools necessary to litigate effectively.

The pattern is systemic, not isolated. A motion-by-motion exemption would force Plaintiff to re-litigate the same structural problem repeatedly, wasting the Court's resources. The alternative relief is equally appropriate because the conferral process has already been attempted and has demonstrably failed.

## II. <u>The Court Should Order Defendants to Provide Copies of Unpublished and Database-Exclusive Authorities</u>

### A. The Request Falls Within the Court's Inherent Authority

Plaintiff's request is procedural, not substantive. No rule prohibits the Court from imposing this modest requirement. The silence of this District's local rules on the issue does not constitute a prohibition. Federal courts routinely exercise inherent authority to issue case-management orders tailored to the needs of *pro se* litigants. *See*, *e.g.*, Doc. No. 45 at A. The Supreme Court recognized that a court's inherent power is derived from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

### B. Persuasive Authority and Principles of Access Support the Request

The Federal Rules of Appellate Procedure require a party which cites a federal judicial opinion, order, or other written disposition "that is not available in a **publicly accessible**

electronic database" to "file and serve a copy … with the brief or other paper in which it is cited." Fed. R. App. P. 32.1(b) (emphasis added).

The Second Circuit has recognized that denying indigent litigants access to fee-based authorities "hamper[s] the litigants' opportunities to understand and assert their legal rights" and threatens "the appearance of justice." *Lebron v. Sanders*, 557 F.3d 76, 78 (2d Cir. 2009).

The Southern and Eastern Districts of New York and the District of Colorado have codified this principle in their local civil rules, requiring counsel to provide copies of unpublished or database-exclusive authorities to *pro se* litigants. *See* S.D.N.Y. & E.D.N.Y. Local Civil Rule 7.2; D.C.COLO.LcivR 7.1(e).

When the adversarial system breaks down due to institutional imbalance, the court has affirmative authority to restore equilibrium. *Cf. Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). The Fifth Circuit has held that federal courts have the inherent authority to appoint counsel when "an indigent plaintiff has colorable claims that will not receive a meaningful hearing without counsel" and all other options have failed. *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015) This authority is "rooted in courts' duty to maintain the functioning of the civil justice system as a whole," because "the bar's monopoly over legal services entails obligations to court and society." *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). The Fifth Circuit's reasoning in *Naranjo* supports the broader principle that when a *pro se* litigant cannot access the materials necessary to participate in the adversarial process, the court must intervene. The district court found that the plaintiff's inability to view documents and participate in discovery impeded his ability to investigate the case and the Fifth Circuit held this justified appointing counsel. *Naranjo v. Thompson*, 809 F.3d 793, 799–800 (5th Cir. 2015). By analogy,

Plaintiff's inability to access unpublished authorities cited by Defendants impedes his ability to respond, justifying a case-management order.

The principle underlying *Bounds v. Smith*, 430 U.S. 817, 828 (1977)—that meaningful access to the courts requires meaningful access to legal materials—is not confined to prisoners. The Supreme Court rooted its holding in a broader line of indigent-access jurisprudence and recognized that the adversarial system requires the ability to research and rebut "seemingly authoritative citations" from an opponent. Because "the cost of protecting a constitutional right cannot justify its total denial," this underlying principle applies to any indigent or *pro se* litigant who is effectively foreclosed from participating in the adversarial process.

### C. The Burden on Defendants Is *De Minimis*, While the Prejudice to Plaintiff Is Substantial

Defendants already possess these materials in electronic form. Serving a PDF contemporaneously with filing imposes no meaningful hardship. To date, CAC and HMA have cited at least seven unpublished or database-exclusive opinions. *See* Doc. No. 59 at 10 & n.7. Without copies, Plaintiff cannot verify holdings, distinguish reasoning, or assess relevance, which undermines the adversarial process.

CAC's argument that this would require defendants to act as a "legal research service" is hyperbolic. The request is limited to authorities defendants *already cite*; it does not require original research.

### D. The Motion for Leave to File an Amended Complaint Is Not Yet Before the Court

Procedure R of the CM/ECF Administrative Procedures of the District of Massachusetts requires that a motion for leave to file a document be accompanied by a copy of the proposed document marked "Proposed." Plaintiff attached the proposed motion and amended complaint precisely to comply with this requirement.

If the Court grants the requested exemption (or alternative leave to file without conferring), Plaintiff will file a standalone Rule 15(a)(2) motion under a new docket entry, with a supporting memorandum, giving defendants full opportunity to oppose on the merits. Accordingly, Defendants' arguments regarding futility, undue delay, and prejudice are premature.

**CONCLUSION**

Procedural rules are the architecture of justice, but that architecture must serve litigants, not exclude them. Local Rule 7.1(a)(2) and the broader framework of adversarial practice assume litigants positioned to engage one another as genuine adversaries—equipped to confer meaningfully, to research authorities, and to test the arguments advanced against them. Where that assumption fails, as it has here, the Court's duty is not to enforce the formal structure for its own sake, but to adapt it so that the substantive work of justice may proceed.

The record before the Court demonstrates a pattern not of isolated procedural missteps, but of a systemic mismatch between the rule's design and the litigation's reality. Defendants have treated conferral as a ministerial box to check rather than a genuine opportunity for dispute-narrowing; they have cited authorities that Plaintiff cannot access, much less rebut; and they now resist the very measures that would restore the adversarial balance their own practices have disturbed. A prospective exemption from Local Rule 7.1(a)(2) and an order requiring provision of unpublished authorities are neither extraordinary nor punitive. They are proportionate responses to a documented dysfunction, grounded in this Court's inherent authority and supported by the weight of persuasive authority from sister courts that have confronted the same structural challenge.

Meaningful access to the courts requires more than a right to file a complaint. It requires the capacity to participate in the adversarial process once the complaint is filed. Plaintiff asks the

Court to ensure that this litigation may proceed on its merits rather than foundering on procedural asymmetries that the rules were never meant to create.

For the foregoing reasons, Plaintiff respectfully requests that this Court:

A. grant Plaintiff an exemption from the requirements of Local Rule 7.1(a)(2) or, in the alternative, grant Plaintiff leave to file the Motion for Leave to File an Amended Complaint and the instant motion;

B. enter an order requiring opposing counsel, when serving a memorandum of law (or other submissions to the court), to provide Plaintiff with copies of cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases; and

C. order such other and further relief as the Court deems just and proper.

Dated: August 11, 2026

Respectfully submitted,

THOMAS GREVE

*/s/ Thomas Greve*

Thomas Greve
Plaintiff, *Pro Se*
33 Dover Street
Cranston, RI 02920
401-449-3753
*thomgreve@gmail.com*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: August 11, 2026

Respectfully submitted,

THOMAS GREVE

*/s/ Thomas Greve*

Thomas Greve
Plaintiff, *Pro Se*
33 Dover Street
Cranston, RI 02920
401-449-3753
*thomgreve@gmail.com*