**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS GREVE,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT ACCEPTANCE CORPORATION; CAPE COD CARZ LLC; RICHARD GRAVINA SR.; RICHARD GRAVINA JR.; WYNN'S EXTENDED CARE, INC.; HYUNDAI MOTOR AMERICA; BALISE MOTOR SALES COMPANY; and CAPE HY, INC., d/b/a Balise Hyundai of Cape Cod,<br><br>Defendants. | Civil Action No. 1:25-CV-13178-AK |

**MEMORANDUM AND ORDER ON DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, IN THE ALTERNATIVE, STAY PENDING ARBITRATION**

**KELLEY, D.J.**

This action arises from the alleged fraudulent sale and repair of a used car. Plaintiff Thomas Greve, proceeding *pro se*, brings this lawsuit under federal and state law against multiple Defendants, alleging, *inter alia*, that they fraudulently obtained his signature on several car loan agreements. Those documents include an arbitration provision, which two Defendants now seek to enforce. One of these Defendants is Credit Acceptance Corp. ("CAC"), who presently moves to compel arbitration and dismiss the claims against it. [Dkt. 33]. For the following reasons, CAC's Motion to Compel Arbitration and Dismiss is **GRANTED**.

## I. BACKGROUND

The Court draws the following facts from the Complaint and documents submitted in

support of the parties' briefing, which are undisputed unless otherwise noted. See Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 171 n.1 (1st Cir. 2021).

### A. Factual Background

Defendant CAC is a national automobile financing provider that partners with car dealerships to offer vehicle loans to consumers. [Dkt. 1 ¶¶ 58-59]. Under CAC's financing program, a dealership sells a vehicle to a customer on credit using a retail installment contract ("RIC"). [Id.]. The RIC is immediately assigned to CAC, who then manages the customer's ongoing loan payments. [See id.].

Defendants Richard Gravina Sr. and Richard Gravina Jr. own and operate Cape Cod Carz LLC ("CCC"), a used car dealership in Hyannis, Massachusetts. [Id. ¶¶ 9-11, 461]. CCC partners with CAC to service its loans. [See id. ¶ 109]. On or around October 16 and 19, 2021, CCC posted online advertisements for a 2011 Hyundai Sonata ("the Vehicle"), with a sales price of $10,995.00. [Id. ¶¶ 87-88]. Plaintiff Thomas Greve saw the advertisement, and on or about October 26, 2021, he went to CCC's location to inquire about purchasing the Vehicle. [Id. ¶ 94]. After a test drive, Plaintiff provided a $500 deposit to secure the purchase. [Id. ¶ 95]. Gravina Jr. provided a signed receipt of the deposit, which specified that an additional payment of $4,600 was due upon delivery of the Vehicle ("Purchase Agreement"). [Id. ¶ 96]. Four days later, Plaintiff paid the balance and completed the sale. [Id. ¶¶ 98]. In total, the value of the sale was $20,989.63. [Id. ¶108].

CCC provided three documents to Plaintiff to memorialize the transaction, which Plaintiff signed in wet ink: a Purchase Contract, a Bill of Sale, and CAC's electronic signature ("e-signature") acknowledgement form ("E-Signature Declaration"). [Id. ¶¶ 99, 104, 123]. After Plaintiff signed these forms, Gravina Jr. allegedly affixed Plaintiff's e-signature to three additional electronic documents: CAC's disclosure form, the RIC (which Plaintiff had previously

received a physical copy of), and a contract for an add-on product. [Id. ¶¶ 128, 130]. According to Plaintiff, this was possible because CCC's e-signature software does not require the signer to draw their signature using the computer's mouse or trackpad; instead, the signer types in their name or initials, and the contract displays the signature as digital text. [Id. ¶¶ 85-86]. Thus, Plaintiff's signature appears on the three electronic documents as his typed name or initials.

**B. Arbitration Clause**

The electronic RIC contains an arbitration provision mandating that any disputes arising from the sale of the Vehicle be litigated before an arbitrator. The RIC states on the first page and as bolded in the original:

> **ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the agreement to arbitrate. By initialing below, you confirm that you have read, understand and agree to the terms and conditions of the Arbitration Clause.

[Dkt. 34-1 at 2]. The Arbitration Clause, located on page 5 of the RIC, states:

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A dispute shall be fully resolved by binding arbitration . . . .
>
> If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in Court or have a jury resolve that dispute . . . .
>
> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

[Id. at 6]. The Arbitration Clause defines "Dispute" as follows:

> [A]ny controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the

> broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

[Id.]. The Arbitration Clause also has an opt-out provision, as bolded in the original:

> **Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

[Id.]. The Arbitration Clause defines the scope of arbitrable claims as follows:

> "[D]ispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause . . . ; all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

[Id.]. Finally, the Arbitration Clause contains the following severability provision:

> If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause . . . . In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

[Id.].

### C. E-Signature Declaration

Plaintiff signed an E-Signature Declaration acknowledging his consent to use e-signatures for signing the electronic RIC. [Id. at 8]. The E-Signature Declaration contains both a "buyer declaration" from Plaintiff and a "seller declaration" from CCC. [Id.]. The buyer declaration provides:

1. I read, understood, and agreed to the eSign Consent form and consented to use electronic signatures to sign all documents necessary to process a retail installment transaction with the Seller named above.

2. I was given the opportunity to review a paper version of the retail installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents.

3. I was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied my e-signature to the documents with the intent to sign the documents as if I provided my handwritten signature on the documents.

4. I received a fully executed copy of the retail installment contract.

[Id.]. Underneath the buyer declaration is Plaintiff's signature in wet ink, dated October 30, 2021. [Id.].

The seller declaration in the E-Signature Declaration provides, as pertinent here:

. . .

2. The Buyer . . . [was] in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied his/her e-signature to the documents, and I witnessed the Buyer . . . applying their electronic signature to the documents.

3. I understand Credit Acceptance Corporation is relying on this declaration in accepting for assignment the electronically signed retail installment contract between Seller and Buyer[].

[Id.].

**D. Procedural History**

On October 30, 2025, Plaintiff filed this action against CAC, CCC, Gravina Sr., Gravina Jr., Mary Ellen Gravina, Wynn's Extended Care, Inc. ("Wynn's"), Hyundai Motor America ("HMA"), Hyundai America Technical Center, Inc. ("HATC"), Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), Balise Motor Sales Company ("BMSC"), and Cape Hy, Inc. [Dkt. 1]. The Complaint asserts 18 counts: (1-2) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act against CAC, CCC, Gravina Sr., Gravina Jr., and Wynn's; (3) fraud

or deceit in the sale of personal property in violation of Mass. Gen. L. ch. 231, § 85J, against CAC, CCC, Gravina Sr., Gravina Jr., and Wynn's; (4) violation of the Truth in Lending Act, 15 U.S.C. § 1601, and the Consumer Credit Cost Disclosure Act, Mass. Gen. L. ch. 140D, against CAC; (5) violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, and Consumer Reporting Act, Mass. Gen. L. ch. 93, §§ 50-56, against CAC; (6) defamation against CAC; (7) invasion of privacy in violation of Mass. Gen. L. ch. 214, § 1B, against CAC; (8) breach of the implied warranty of merchantability in violation of Mass. Gen. L. ch. 106, § 2-314, against CCC and HMA; (9) breach of the implied warranty of fitness for a particular purpose in violation of Mass. Gen. L. ch. 106, § 2-315, against CCC and HMA; (10) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, against CCC and HMA; (11) fraudulent misrepresentation against HMA, BMSC, and Cape Hy; (12) negligent misrepresentation against HMA, BMSC, and Cape Hy; (13) negligent supervision against BMSC and Cape Hy; and (14-18) violations of Mass. Gen. L. ch. 93A, § 9 ("Chapter 93A"), against CAC, CCC, HMA, HMMA, BMSC, and Cape Hy. [Id.].

On March 3, 2026, CCC moved to stay the action pending arbitration. [Dkt. 24]. On March 12, 2026, CAC moved to compel arbitration and to dismiss, or, in the alternative, stay pending arbitration. [Dkt. 33]. Mary Ellen Gravina, Gravina Sr., Gravina Jr., Wynn's, and HMA, HMMA, and HATC filed motions to dismiss. [Dkts. 25-27; 35; 40]. Plaintiff voluntarily dismissed his claims against Mary Ellen Gravina, HATC, and HMMA. [Dkts. 56; 66]. Balise and Cape Hy filed an Answer. [Dkt. 31]. The Court held a scheduling conference with the parties on July 21, 2026. [See Dkt. 61]. The same day, the Court entered a Scheduling Order as to Balise and Cape Hy only, taking the remaining Motions under advisement. [See Dkt. 60].

## II. LEGAL STANDARD

A court's review of a motion to stay pending arbitration or to compel arbitration is

governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). However, this policy applies only where a valid arbitration agreement is shown to exist. See EEOC v. Waffle House, 534 U.S. 279, 294 (2002); Emmannuel v. Handy Techs., Inc., 442 F. Supp. 3d 385, 391 (D. Mass. 2020) ("[T]he FAA does not compel arbitration unless the Court is satisfied that there exists a valid agreement to arbitrate." (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989))), aff'd, 992 F.3d 1 (1st Cir. 2021). "Consequently, arbitration clauses are subject to 'generally applicable contract defenses' available under state law." Handy Techs., 442 F. Supp. 3d at 391 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). This includes "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC, 563 U.S. at 339 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

The party seeking to enforce an arbitration clause bears the burden to "demonstrate 'that a valid agreement to arbitrate exists, that [it] is entitled to invoke the arbitration clause, that [the nonmoving party] is bound by that clause, and that the claim asserted comes within the clause's scope.'" Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). If the moving party "meets its initial burden of production, the non-moving party must offer evidence supporting its own

case." Crean v. Morgan Stanley Smith Barney, LLC, 652 F. Supp. 3d 171, 175 (D. Mass. 2023) (quoting Casale v. Ecolab Inc., No. 21-CV-00126, 2022 WL 1910126, at *4 (D. Me. June 3, 2022)). "If the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." Air-Con, 21 F.4th at 175 (quoting 9 U.S.C. § 4) (citing Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir. 2014)). However, "[t]he non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'" Id. at 175 n.8 (quoting Soto v. State Indus. Prods., 642 F.3d 67, 72 n.2 (1st Cir. 2011)).

In evaluating motions to compel arbitration under the FAA, "district courts . . . apply the summary judgment standard." Id. at 175. Under this standard, the Court "construe[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." Id.

## III. COMPLIANCE WITH LOCAL RULES

As a preliminary matter, Plaintiff argues that the Motion should be denied even without reaching the merits because Defendant allegedly failed to comply with Local Rule 7.1(b)(1). This Rule requires that a motion be supported by a separate "memorandum of reasons, including citation of supporting authorities" and other evidence. L.R., D. Mass. 7.1(b)(1). Plaintiff argues that Defendant failed to properly authenticate two Exhibits attached to the Motion, and the Motion therefore fails to "includ[e] citation of supporting authorities" because the proffered evidence is inadmissible. Id. Specifically, Plaintiff objects to: (1) the electronic RIC [Dkt. 34-1 at 2-6, 8], and (2) the E-Signature Declaration [Dkt. 34-2 at 3].

Failure to comply with Local Rules can, in certain circumstances, be the basis for

denying a motion. See Clausen v. Sea-3, Inc., 21 F.3d 1171, 1196-97 (1st Cir. 1994). However, "[a] district court has 'broad latitude in administering local rules,'" and need not automatically deny motions based on rule violations alone. John & Jane, LLC v. Isabel, 822 F. Supp. 3d 195, 202 (D. Mass. 2026) (quoting Melino v. Bos. Med. Ctr., 127 F.4th 391, 397 (1st Cir. 2025)).

At the summary judgment stage (and thus, on reviewing a motion to compel arbitration), "a court may consider evidence unless it 'cannot be presented in a form that would be admissible in evidence.'" Vaks v. LumiraDx, Inc., No. 18-CV-12571, 2020 WL 7321159, at *4 (D. Mass. Dec. 11, 2020) (quoting Fed. R. Civ. P. 56(c)(2)), aff'd, No. 21-1031, 2021 WL 6339631 (1st Cir. Dec. 7, 2021). Importantly, the relevant inquiry for the court "is not that the material *'has not'* been submitted in admissible form, but that it *'cannot'* be." Id. (emphasis added) (quoting Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Loc. 1740, No. 12-CV-1996, 2015 WL 5022794, at *2 (D.P.R. Aug. 21, 2015)).

Authentication is a prerequisite to admissibility and is governed by Federal Rules of Evidence 901 and 902. See United States v. Ladd, 885 F.2d 954, 956 (1st Cir. 1989) (citing Fed. R. Evid. 901(a)); United States v. Rodriguez-Kelly, No. 23-CR-0231, 2024 WL 4262531, at *2 (D.P.R. Sep. 23, 2024). "Rule 901 requires that the proponent provide sufficient evidence to support a finding that the item is what it is claimed to be," such as witness testimony. Rodriguez-Kelly, 2024 WL 4262531, at *2 (citing United States v. Charbonier-Laureano, 20-CR-248, 2023 WL 8446392, at *1 (D.P.R. Dec. 5, 2023)). "However, certain categories of evidence are self-authenticating under Rule 902 and do not require extrinsic evidence . . . to support their authenticity." Id. These include "acknowledged documents"—i.e., documents that have been notarized or sworn, Fed. R. Evid. 902(8); and certain certified records that satisfy the requirements of Rule 803(6), Fed. R. Evid. 902(11). "Classic examples of self-authenticating

business records are bank and phone records." Rodriguez-Kelly, 2024 WL 4262531, at *2. Thus, the Federal Rules provide multiple means for establishing authenticity, and a party need satisfy only one. See Yongo v. INS, 355 F.3d 27, 30-31 (1st Cir. 2004).

Plaintiff first challenges the electronic RIC, arguing that Defendant has failed to properly authenticate the document by establishing a chain of custody, such as by submitting an affidavit from a qualified custodian or other similar evidence. Plaintiff also points to discrepancies in the numerical values and formatting between the versions of the electronic RIC submitted by CCC and CAC. According to Plaintiff, these discrepancies call into question the documents' authenticity.

Reading the facts in Plaintiff's favor, even if Plaintiff is correct that Defendant has not yet authenticated the electronic RIC, he does not establish that the electronic RIC could not be later authenticated at trial. That is, the fact that Defendant has not, at this stage, submitted a custodian's affidavit establishing the document's foundation does not mean that such a foundation could not later be established at trial. See LumiraDx, Inc., 2020 WL 7321159, at *4 (citing Fed. R. Evid. 803(6)) (declining to strike exhibits at summary judgment for lack of authentication, concluding that defendant could later provide the necessary foundation at trial). For example, a qualified witness with knowledge of Defendant's RIC records and the manner in which they are created and maintained could potentially provide the relevant testimony. See Harris v. Nat'l Grid USA Serv. Co., Inc., No. 22-CV-11628, 2025 WL 915690, at *10 n.4 (D. Mass. Mar. 26, 2025) (quoting Fed. R. Evid. 803(6)(B), (C)), aff'd, 171 F.4th 118 (1st Cir. 2026) (explaining authentication of business records). Nor do the discrepancies between CCC's and CAC's versions of the electronic RIC compel a different conclusion. Those discrepancies may bear on the accuracy, reliability, or weight of evidence, but Plaintiff has not shown that they,

alone, render the electronic RIC incapable of authentication. Thus, the Court will consider the electronic RIC at this stage.

Plaintiff next challenges the E-Signature Declaration, principally contending that the buyer's declaration was not made under penalty of perjury as required under 28 U.S.C. § 1746. Again, this argument fails to demonstrate that another means of authentication would not be available later at trial. Plaintiff's argument rests on the premise that Section 1746 is the exclusive means by which the E-Signature Declaration can be authenticated. However, Section 1746 simply provides a means of substituting an unsworn declaration for an affidavit or other sworn document. See 28 U.S.C. § 1746 (allowing an unsworn declaration to be used "[w]herever, under any . . . requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . in writing of the person making the same").[1] It does not create a freestanding requirement for authenticating an unsworn declaration or displace the other authentication methods available under the Federal Rules of Evidence. And as with the electronic RIC, the present record does not establish that Defendant could not authenticate the E-Signature Declaration at trial. To the extent the E-Signature Declaration constitutes a record of regularly conducted business activity, Defendant may be able to establish its authenticity through appropriate testimony or certification. The Court accordingly declines to exclude the E-Signature Declaration from consideration at this stage.[2]

---

[1] Moreover, the E-Signature Declaration does not appear to be a "declaration" as contemplated in 28 U.S.C. § 1746. There is nothing suggesting that Plaintiff was required by law to make the statements in the E-Signature Declaration in the manner described by the statute.

[2] Plaintiff separately argues that the seller's declaration in the E-Signature Declaration is inadmissible because it was made by CCC, an artificial entity, which lacks the legal capacity to execute an unsworn declaration. However, the Court finds that the Arbitration Clause is

In sum, the Court finds that the electronic RIC and E-Signature Declaration may be properly considered at this stage. Because Defendant's memorandum in support of its Motion to Compel Arbitration is sufficiently briefed and supported by evidence, the Court declines to deny the Motion for failure to comply with the Local Rules.

## IV. MERITS

Having resolved Plaintiff's threshold procedural and evidentiary objections, the Court moves to the merits of the contractual dispute between the parties. Defendant seeks to enforce the Arbitration Clause in the electronic RIC. Plaintiff opposes the Motions, arguing that no valid contract between the parties was formed, or, in the alternative, that the Arbitration Clause is unconscionable. For the following reasons, the Court finds that, based on the present record, there is no genuine dispute of material fact that a valid and enforceable contract was formed between the parties.

### A. Contract Formation

The parties do not dispute that Massachusetts law applies to the contract at issue here, and so the Court applies that law to the issue of whether a valid agreement to arbitrate exists. See Crean, 652 F. Supp. 3d at 179 ("[I]n 'deciding whether the parties agreed to arbitrate a certain matter [under the FAA] . . . courts . . . should apply ordinary state-law principles that govern the formation of contracts.'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995))). "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 89 (1st Cir. 2018) (citing Quinn v. State Ethics Comm'n, 401 Mass. 210 (1987)). This requires "both

---

enforceable even without consideration of the seller's declaration. Thus, the Court declines to reach this argument here.

reasonable notice of the terms and a reasonable manifestation of assent to those terms." Kauders v. Uber Techs., Inc., 486 Mass. 557, 572 (2021).

Defendant has met its initial burden of demonstrating that a valid arbitration agreement exists by providing copies of the electronic RIC, which bears Plaintiff's e-signature. Defendant also provides the E-Signature Declaration, in which Plaintiff declares that he consented to the e-signature process and was in control of the keyboard and mouse in signing the electronic RIC. The burden thus shifts to Plaintiff to put forth evidence sufficient to create a genuine dispute of material fact as to the Arbitration Clause's validity.

Plaintiff's principal argument is that his e-signature on the Arbitration Clause is invalid. In support, he submits an affidavit that he was never presented with the electronic RIC, that he did not personally sign the Arbitration Clause, and that Gravina Jr. signed the electronic RIC on his behalf without his consent. Plaintiff also advances several additional miscellaneous arguments, including: (1) the e-signature fails to satisfy the Massachusetts Uniform Electronic Transactions Act ("UETA"), Mass. Gen. L. ch. 110G; (2) Gravina Jr. pressured him into signing the E-Signature Declaration; and (3) the electronic RIC contains discrepancies demonstrating that the parties never reached a meeting of the minds. As explained below, none of these arguments are sufficient to meet Plaintiff's burden.

**1. E-Signature Declaration**

"It has long been the rule, and for an important purpose, that a person who signs an acknowledgement that he or she has read and understands the provisions of a document will be held to their word, however strenuously they may later profess ignorance of the contents of that document." Chong v. Ne. Univ., No. 20-CV-10844, 2021 WL 1857341, at *5 (D. Mass. May 10, 2021) (citing Spritz v. Lishner, 355 Mass. 162, 164 (1969)). Similarly, "[w]hen an interested

witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994); see, e.g., Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139-40 (1st Cir. 2013) (ignoring plaintiff's deposition testimony that she did not work certain hours when earnings statements and her statement of material facts said otherwise); Scott v. Harris, 550 U.S. 372, 378-79 (2007) (discrediting nonmovant's testimony that he did not speed when video record showed high-speed chase); Gunter v. Township of Lumberton, 535 F. App'x 144, 149-50 (3d Cir. 2013) (discrediting testimony that police officers delayed more than ten minutes before rendering medical care where dispatch records and AED activation time contradicted this timeline).

In an affidavit, Plaintiff alleges that Gravina Jr. signed the Arbitration Clause on his behalf and without his consent. However, Plaintiff concedes that he personally signed the E-Signature Declaration, which declares that he—not Gravina Jr.—was in control of the keyboard and mouse and consented to the e-signature process. His affidavit now merely asserts that his previous declaration is untrue without further explanation of the discrepancy. Under both the principle that a court will hold a plaintiff to his previously signed acknowledgment, and the principle that a plaintiff may not create a dispute of material fact by submitting an affidavit that merely contradicts other objective evidence on the record, the Court finds that Plaintiff's affidavit is insufficient to establish that he did not sign the electronic documents but that Gravina Jr. did on his behalf. Cf. Credit Acceptance Corp. v. Ledbetter, No. 16-CV-70, 2016 WL 4688867 at *3-4 (N.D. Miss. Sep. 7, 2016) (setting evidentiary hearing where plaintiff provided evidence of her genuine signature to prove the signature on the declaration form was not her own); Talbott v. Credit Acceptance Corp., No. 21-CV-05133, 2022 WL 4793126, at *5 (E.D. Pa. Oct. 3, 2022)

(granting motion to compel arbitration where plaintiff asserted, contrary to his signed declaration in the contract, that he did not read and understand its terms); Bourque v. Rollins, Inc., 764 F. Supp. 3d 11, 16 (D. Mass. 2025) (granting motion to compel arbitration where plaintiff provided only an affidavit that he did "not remember signing an arbitration agreement"); Henriquez De Gonzalez v. Credit Acceptance Corp., No. 26-CV-21651, 2026 WL 1339283, at *5 (S.D. Fla. May 14, 2026) (finding valid Credit Acceptance Corp.'s exhibit of a contract containing the plaintiff's e-signature and "her initials acknowledging the Arbitration Clause . . . pursuant to a Declaration Acknowledging Electronic Signature Process . . . which contained Plaintiff's handwritten signature").

**2. Massachusetts Uniform Electronic Transactions Act ("UETA")**

Plaintiff next argues that the e-signature on the Arbitration Clause is invalid under the Massachusetts UETA. The UETA provides, in relevant part, that an "electronic signature is attributable to a person if it was the act of the person." Mass. Gen. L. ch. 110G, § 9(a). The Act states that "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Id. "Electronic signature" is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Id. § 2. Citing the allegations in his affidavit, Plaintiff argues that he did not "inten[d] to sign the record" and that Defendant has failed to show that his signature is "attributable" to him because they have failed to detail their security procedures.

As a preliminary matter, Plaintiff cites no authority establishing that the UETA is applicable in these circumstances. As another session of this court recently observed, "no

Massachusetts court has assessed the circumstances under which 'an electronic signature on an arbitration agreement is attributable to a plaintiff'" under the UETA. Bourque, 764 F. Supp. 3d at 15 n.1. The Court is reluctant to extend a state statute beyond the boundaries established by the Massachusetts courts in an area of substantive contract rights absent a sufficient basis to conclude that the state courts would do so.

In any event, even assuming the UETA applies, Defendant has demonstrated that its requirements are satisfied. The Act is clear that the "act of the person may be shown in any manner." Mass. Gen. L. ch. § 9(a). Accordingly, for the purposes of this Motion, the E-Signature Declaration adequately demonstrates both that Plaintiff "inten[ded] to sign" the Arbitration Clause and that the e-signature appearing on the document is "attributable" to Plaintiff.

**3. Duress**

Beyond his challenges to the validity of his e-signature, Plaintiff contends that the Arbitration Clause is unenforceable because Gravina Jr. allegedly pressured him into signing the E-Signature Declaration. Specifically, before signing the E-Signature Declaration, Plaintiff allegedly "questioned the discrepancy in the E-Sign Declaration" to Gravina Jr., who responded, "Well, it's too late now. You want the car, right? Just sign the form." [Dkt. 1 ¶ 295]. Plaintiff claims that this was an implicit threat to cancel the transaction, which would force him to forfeit his deposit on the Vehicle.

The Court construes Plaintiff's argument as invoking duress as a defense to contract formation. Duress is an affirmative defense that requires proof of three elements: "(1) [Plaintiff] has been the victim of some unlawful or wrongful act or threat; (2) the act or threat deprived him of his free or unfettered will; and (3) due to the first two factors, he was compelled to make a disproportionate exchange of values." Happ v. Corning, Inc., 466 F.3d 41, 44 (1st Cir. 2006). In

the present case, even assuming Plaintiff establishes economic or financial pressure, such pressure, standing alone, does not rise to the level of duress sufficient to void a contract. See Kozak v. Shrine of Our Lady of La Salette, Inc., No. 02-CV-11432, 2005 WL 8175874, at *5 (D. Mass. May 2, 2005) ("Equally unavailing is the claim that the Release was signed under duress because [plaintiff] was pressured for time and believed she would lose her deposit if she did not sign.").

**4. Meeting of the Minds**

Finally, Plaintiff contends that the parties never reached a meeting of the minds as to the electronic RIC's material terms, thus precluding the formation of a valid contract. In support, he points to discrepancies in the numerical values and formatting of the versions of the electronic RIC submitted by CCC and CAC.

In Massachusetts, "a contract is not to be held unenforceable 'if, when applied to the transaction and construed in the light of the attending circumstances,' the meaning can be ascertained with reasonable certainty." Simons v. Am. Dry Ginger Ale Co., 335 Mass. 521, 523 (1957) (quoting Cygan v. Megathlin, 326 Mass. 732, 734 (1951)). To render a contract unenforceable, "[i]ndefiniteness must reach the point where construction becomes futile." Weiner v. Pictorial Paper Package Corp., 303 Mass. 123, 131 (1939) (quotation omitted).

Here, the identified inconsistencies are not material and therefore do not demonstrate that the parties failed to reach a meeting of the minds. None of the discrepancies in numerical values concern the Arbitration Clause, but rather involve the underlying sales transaction, and thus do not bear on Defendant's ability to compel arbitration. See Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 512 (1st Cir. 2020) (explaining that arbitration clauses are generally severable from the rest of the contract unless provided otherwise). The formatting

inconsistencies are likewise immaterial, consisting only of differences in font face and character spacing. Accordingly, Plaintiff fails to provide sufficient evidence to create a genuinely triable issue that the Arbitration Clause is invalid. The Court thus finds that the parties formed a valid contract, including an agreement to arbitrate.

**B. Unconscionability**

In the alternative, Plaintiff argues that even if a valid contract was formed between the parties, the Arbitration Clause is unenforceable because it is unconscionable. "[C]ourts analyze unconscionability 'issue[s] under normal state law unconscionability standards.'" Britto v. Prospect Chartercare SJHSRI, LLC, 909 F.3d 506, 515 (1st Cir. 2018) (quoting Skirchak v. Dynamics Rsch. Corp., 508 F.3d 49, 59 (1st Cir. 2007)).

In Massachusetts, an unconscionable contract is one "such as no man in his senses and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other." Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 299 (D. Mass. 2016) (quoting Waters v. Min Ltd., 412 Mass. 64, 69 (Mass. 1992)), aff'd, 918 F.3d 181 (1st Cir. 2019). Unconscionability is "determined on a case-by-case basis." Farahani v. Verizon Wireless Servs., LLC, No. 25-CV-13285, 2026 WL 2268822, at *8 (D. Mass. Aug. 6, 2026) (quoting Waters, 412 Mass. at 68). "[T]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." Machado v. System4 LLC, 471 Mass. 204, 218 (2015). Courts have found that a party to a contract "had no meaningful choice" when "the process leading up to [the contract's] formation [wa]s oppressive." Bekele, 199 F. Supp. 3d at 301. "Oppressive" situations include those where companies engage in "high-pressure sales tactics" and "alterations to an employee's existing

contract where the 'content, the obscurity, and the timing of the communication and failure to require a response from employees raise unconscionability concerns.'" Id. (cleaned up).

Here, Plaintiff contends that the Arbitration Clause is procedurally unconscionable because: (1) he had no meaningful opportunity to negotiate; (2) he had no time to review the 29,000-word agreement before he was asked to sign; and (3) it is a contract of adhesion. As explained below, none of these arguments are evident of procedurally oppressive tactics.

First, while Plaintiff claims that he was unable to negotiate, he makes no claim that he attempted to negotiate the arbitration provision and was refused. Moreover, the Arbitration Clause contains an opt-out provision under which Plaintiff had thirty days to voluntarily reject the Clause. Cf. Barrasso v. Macy's Retail Holdings, Inc., No. 15-CV-13098, 2016 WL 1449567, at *6 (D. Mass. Apr. 12, 2016) (granting motion to compel arbitration over unconscionability challenge, in part because "[employee] agreed to the [defendant's] arbitration procedures at the outset of his employment relationship" through "an entirely voluntary act—even if economically motivated").

As to Plaintiff's contention that he did not have adequate time to review the Arbitration Clause's terms, the Court finds the argument unavailing for several reasons. First, the law requires only reasonable notice that the parties' claims are subject to arbitration, and Plaintiff does not dispute that he received such notice here. See Bourque, 764 F. Supp. 3d at 17 (upholding arbitration clause where plaintiff "did not receive or have an opportunity to review" the separate dispute-resolution policy before signing because the agreement reasonably notified plaintiff that "their employment-related claims would be subject to arbitration," noting that the agreement contained a bolded heading on the first page). Moreover, Plaintiff does not contend that he requested additional time to review the Arbitration Clause and was denied that request, or

that Defendant otherwise pressured him to "read the [contract] quickly, or not read it at all." Bekele, 199 F. Supp. 3d at 302 (citing Storie v. Household Int'l, Inc., No. 03-CV-40268, 2005 WL 3728718, at *9 (D. Mass. Sep. 22, 2005)). Finally, it is undisputed that Plaintiff received a physical copy of the RIC before executing the electronic version, and Plaintiff neither alleges nor offers evidence that the two versions materially differ. Nor does he allege that the advance period of review that he was afforded was insufficient to review the five-page contract terms. See Kergald v. Armstrong Transfer Exp. Co., 330 Mass. 254, 255 (1953) ("Where what is given to a plaintiff purports on its face to set forth the terms of a contract, the plaintiff, whether he reads it or not, by accepting it assents to its terms, and is bound.").

Lastly, Plaintiff argues that the Arbitration Clause is unconscionable for the mere reason that it is a contract of adhesion. However, that argument is unavailing because adhesion contracts "are not per se invalid" in either Massachusetts or the First Circuit. Pizza Hazel v. Am. Express Co., No. 24-CV-12505, 2025 WL 2682394, at *11 (D. Mass. Sep. 19, 2025) (citing Bekele, 199 F. Supp. 3d at 302).

In sum, Plaintiff fails to demonstrate that the Arbitration Clause is procedurally unconscionable. Because the Arbitration Clause is not procedurally unconscionable, the Court need not reach the issue of whether it is substantively unconscionable. See Storie, 2005 WL 3728718, at *10. Plaintiff fails to meet his "heavy burden" of showing that the Arbitration Clause is enforceable because it is unconscionable. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999).

## V. CONCLUSION

For the foregoing reasons, CAC's Motion to Compel Arbitration and Dismiss is **GRANTED**. CAC is thus **DISMISSED** as a party to this action.

**SO ORDERED.**

Dated: October 20, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge