**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS GREVE,<br><br>Plaintiff,<br><br>v.<br><br>CAPE COD CARZ LLC; RICHARD GRAVINA SR.; RICHARD GRAVINA JR.; WYNN'S EXTENDED CARE, INC.; HYUNDAI MOTOR AMERICA; BALISE MOTOR SALES COMPANY; and CAPE HY, INC., d/b/a Balise Hyundai of Cape Cod,<br><br>Defendants. | Civil Action No. 1:25-CV-13178-AK |

**MEMORANDUM AND ORDER ON DEFENDANT CAPE COD CARZ LLC'S MOTION TO STAY PENDING ARBITRATION**

**KELLEY, D.J.**

Before the Court is Defendant Cape Cod Carz LLC's ("CCC") Motion to Stay Pending Arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. [Dkt. 24]. For the reasons below, CCC's Motion to Stay Pending Arbitration is **GRANTED**. This action is **STAYED** as to Plaintiff's claims against CCC pending completion of arbitration.

## I. BACKGROUND

The Court incorporates by reference the factual and procedural background set forth in its prior Order granting Defendant Credit Acceptance Corp.'s ("CAC") Motion to Compel Arbitration and Dismiss. [See Dkt. 69]. Only additional developments relevant to the resolution of CCC's Motion are provided below.

On October 20, 2026, this Court granted a CAC's Motion to Compel Arbitration and

Dismiss, thereby terminating that defendant as a party to this action. [Dkt. 69]. In light of that ruling, the Court observed that CCC's Motion and Plaintiff's Opposition raise substantially similar legal and factual issues to those raised in the briefing for CAC's motion.[1] [Dkt. 70]. The Court therefore ordered the parties to show cause why CCC's Motion should not likewise be granted and CCC dismissed as a party to this action. [Id.]. Plaintiff filed a response to the Court's show-cause order on October 27, 2026. [Dkt. 71]. CCC did not file a response by the deadline nor request an extension of time to do so.

## II. DISCUSSION

In response to the Court's show-cause order, Plaintiff raises four principal objections. First, he contends that the legal and factual issues presented in CCC's Motion are not substantially similar to those raised in CAC's motion, noting the distinction between a motion to compel arbitration under Section 4 of the FAA and a motion to stay pending arbitration under Section 3 of the FAA. Second, Plaintiff argues that the Court's prior conclusion that he failed to create a genuine dispute of material fact was wrong. Third, Plaintiff contends that CCC has

---

[1] In Plaintiff's Opposition, the Court identifies only two additional objections unique to CCC, both concerning compliance with the Local Rules. Specifically, Plaintiff argues that the Motion should be summarily denied because CCC failed to confer before filing the Motion, as required by Local Rule 7.1(a)(2), and that CCC failed to submit a separate memorandum of law, as required by Local Rule 7.1(b)(1)

Neither ground warrants summary denial. As to the failure to confer, this action remains at an early stage, and the record does not reflect repeated instances of a failure or refusal to confer that would justify the drastic remedy of summary denial. See Shea v. Ditech Fin. LLC, 255 F. Supp. 3d 273, 279 (D. Mass. 2017) (citing Blanchard v. Swaine, No. 08-CV-40073, 2010 WL 4922699, at *5 (D. Mass. Nov. 29, 2010)) (declining to deny a motion for failing to meet and confer), aff'd, 812 F. App'x 7 (1st Cir. 2020); In re Elizabeth & Niki Fishing Corp., 706 F. Supp. 3d 147, 150 (D. Mass. 2023) (same). As to the memorandum requirement, while Plaintiff is correct that CCC did not file a separate memorandum, the Motion itself—although sparse—is minimally adequate at this stage to apprise the Court of its essential arguments and evidentiary basis for the requested relief. Cf. Martin v. Tricam Indus., Inc., 379 F. Supp. 3d 105, 108 n.1 (D. Mass. 2019) (declining to summarily deny a motion for summary judgment despite the movant's failure to comply with Local Rule 56.1 where the court could "assess the issues . . . based on its review of the record").

defaulted on its right to pursue arbitration. Finally, he contends that the Arbitration Clause is unenforceable because it fails to comply with the discovery rules of the American Arbitration Association ("AAA") and Judicial Arbitration and Mediation Services ("JAMS"). As explained below, having considered these arguments in turn, the Court finds no persuasive basis to depart from its prior rulings.

**A. Sections 3 and 4 of the FAA**

Plaintiff first contends that the Court's prior ruling does not present substantially similar legal and factual issues because CAC moved to compel arbitration under Section 4 of the FAA, whereas CCC seeks a stay of proceedings under Section 3. However, Plaintiff's argument, consisting of three sentences, cites no authority and presents no argument concerning how the governing standards for motions under Sections 3 and 4 are materially distinct for purposes of the present dispute, or why the distinction would produce a different result. Although Sections 3 and 4 serve distinct procedural functions, the First Circuit has explained that "courts have long advised that § 3 and § 4 should be interpreted together" and "[i]f a court stays litigation [pursuant to § 3], it should also compel arbitration under § 4 of the FAA." 5-Star Gen. Store v. Am. Express Co., 189 F.4th 5, 9 (1st Cir. 2026) (citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 13 (1st Cir. 2005)). CAC and CCC's motions rely on the same Arbitration Clause, arise from the same underlying facts, and Plaintiff's arguments in his oppositions to both motions are nearly identical. Under these circumstances, the Court finds no material basis on which the analysis for the motions differs.

That said, the Court notes that the Supreme Court has recently held that when a party requests a stay pending arbitration, the district court lacks authority to dismiss the action. See Smith v. Spizzirri, 601 U.S. 472, 475-76 (2024). Accordingly, because CCC moves to stay pending arbitration and has not otherwise requested dismissal, the Court may not dismiss the

claims against CCC nor terminate it as a party to this action. The Court must instead stay those claims pending arbitration.

**B. Request for an Evidentiary Hearing**

Plaintiff next challenges the Court's prior conclusion that he failed to create a genuine dispute of material fact concerning the existence of an agreement to arbitrate. [See Dkt. 69 at 13-15]. He maintains that his affidavit denying that he signed the electronic retail installment contract, which contains the Arbitration Clause, was sufficient to create a factual dispute and that the Court therefore erred in resolving the issue without holding an evidentiary hearing. In support, Plaintiff relies on decisions from out-of-circuit district courts involving motions to compel arbitration filed by CAC and finding that an evidentiary hearing was appropriate, as well as a Sixth Circuit opinion with allegedly similar facts. [See Dkt. 71 at 2-3 (citing Greiner v. Credit Acceptance Corp., No. 16-CV-01328, 2017 WL 586727, *2-3 (D. Kan. Feb. 13, 2017); Crosby v. Credit Acceptance Corp., No. 15-CV-10786, slip op. at 2-4 (E.D. Mich. Jul. 10, 2015); Burnip v. Credit Acceptance Corp., No. 18-CV-01839, 2018 WL 6040437, at *1 (D. Minn. Nov. 19, 2018); Credit Acceptance Corp. v. Ledbetter, No. 16-CV-70, 2016 WL 4688867 (N.D. Miss. Sep. 7, 2016); Bazemore v. Papa John's U.S.A., Inc., 74 F.4th 795 (6th Cir. July 20, 2023))].

Plaintiff's arguments are unpersuasive. With one exception, the CAC cases Plaintiff cites did not discuss an E-Signature Declaration, which the Court's prior analysis relied on substantially. The Court explained that Plaintiff's affidavit merely denied the facts reflected in the E-Signature Declaration without offering any explanation as to the discrepancy. The Court found that this was insufficient to create a genuine dispute of material fact "[under] both the principle that a court will hold a plaintiff to his previously signed acknowledgment, and the principle that a plaintiff may not create a dispute of material fact by submitting an affidavit that merely contradicts other objective evidence on the record." [Dkt. 69 at 14]. Plaintiff does not

address these conclusions in his response to the Court's show-cause order.

The one decision Plaintiff cites involving an E-Signature Declaration, Ledbetter, is likewise distinguishable. See 2016 WL 4688867. There, the plaintiff challenged the authenticity of the E-Signature Declaration, denying that she had signed it and submitting examples of her actual signature as evidence that the signature on the E-Signature Declaration was forged. See id. at *3-4. Plaintiff has made no comparable showing here. To the contrary, Plaintiff acknowledged that he signed the E-Signature Declaration in wet ink and offers no evidence undermining that signature. Accordingly, Plaintiff identifies no basis to disturb the Court's prior determination that no genuine factual dispute warranted an evidentiary hearing.

**C. Default on Arbitration**

Plaintiff next contends that CCC defaulted on its right to pursue arbitration because CCC has not initiated arbitration or selected an arbitrator and Plaintiff, likewise, has not refused to arbitrate. "[A] court is only permitted to stay a court action pending arbitration if 'the applicant for the stay is not in default in proceeding with such arbitration.'" Marie, 402 F.3d at 12 (quoting 9 U.S.C. § 3). A party defaults on its right to arbitration "by acting inconsistently with that right." Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022); see Toddle Inn Franchising, LLC v. KPJ Assocs., 8 F.4th 56, 64 (1st Cir. 2021). In determining whether a party waived its right to arbitrate, courts in the First Circuit "employ a non-exclusive factor-based test." Morales Posada v. Cultural Care, Inc., No. 20-CV-11862, 2024 WL 841414, at *4 (D. Mass. Feb. 28, 2024), aff'd, 141 F.4th 301 (1st Cir. 2025). The factors include: (1) "whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the litigation machinery has been substantially invoked and the parties are well into preparation of a lawsuit by the time an intention to arbitrate is communicated; (3) whether there has been a long delay and trial is near at hand; (4) whether the party seeking to compel arbitration has invoked the jurisdiction of

the court by filing a counterclaim; [and] (5) whether discovery not available in arbitration has occurred." FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015) (internal quotation and alteration marks omitted) (citing Restoration Pres. Masonry v. Grove Eur., Ltd., 325 F.3d 54, 60-61 (1st Cir. 2003)). No factor is dispositive, for "each case is to be judged on its particular facts." Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc., 540 F. Supp. 3d 182, 194 (D.R.I. 2021) (quoting In re Tyco Int'l Ltd. Sec. Litig., 422 F.3d 41, 46 (1st Cir. 2005)).

The record does not demonstrate that CCC acted inconsistently with its right to arbitrate. CCC sought a stay without first engaging in extensive litigation of the Plaintiff's claims, filing a timely motion to stay in short order in response to the Complaint. See Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948-49 (1st Cir. 2014). No discovery as to CCC's claims has commenced, CCC has not filed a counterclaim, and there is no upcoming trial. Accordingly, Plaintiff identifies no basis to conclude that Defendant defaulted on its obligation to arbitrate.

To the extent Plaintiff argues that CCC was required to initiate arbitration prior to moving to stay, this argument is wrong. Plaintiff commenced this action first in federal court, and CCC thereafter timely sought a stay pending arbitration. See Morgan, 596 U.S. at 413 ("When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act . . . entitles the defendant to file an application to stay the litigation." (citing 9 U.S.C. § 3)); see also Marie, 402 F.3d at 17 ("[I]n general there is no need for the non-complaining party, the employer, to make a 'pre-suit demand for arbitration.'" (quoting Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1223 (11th Cir.2000))).

**D. Discovery Requirements**

Finally, Plaintiff contends that the Arbitration Clause is unenforceable because it requires only the complaining party to provide responses to discovery requests, whereas the JAMS

Minimum Standard of Procedural Fairness and AAA's Consumer Due Process Protocol require mutual discovery.[2] Specifically, the Arbitration Clause states: "If a Dispute arises . . . the complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests." [Dkt. 24-1 at 3].

The Court is not persuaded. The Arbitration Clause does not expressly incorporate either organization's rules. Rather, it simply provides that the parties may elect to arbitrate before the AAA or JAMS, and if either of those organizations decline to arbitrate—including where the organizations find that the Arbitration Clause fails to comply with its rules—the parties may select another mutually agreed-upon arbitrator or seek a court-appointed arbitrator:

> Whoever first selects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association . . . . If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator.

[Id.]. Plaintiff identifies no authority establishing that an arbitration agreement must independently satisfy the discovery requirements of either organization to be enforceable under the FAA. See Rowley v. Wyndham Resorts Dev. Corp., No. 22-CV-01424, 2022 WL 22860455, at *3 (D.S.C. Dec. 22, 2022) ("[T]he Contract does not contractually obligate [defendant] to meet all the AAA requirements, rather the contract requires that certain disputes must be resolved through binding arbitration administered by the AAA.").

---

[2] Specifically, JAMS will administer arbitrations only if the contract arbitration clause "allow[s] for the discovery or exchange of non-privileged information relevant to the dispute." *Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness*, Judicial Arbitration & Mediation Servs. (May 1, 2024), https://www.jamsadr.com/consumer-minimum-standards. The AAA Protocol similarly provides that consumer arbitration agreements "which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration" because "[n]o party should ever be denied the right to a fundamentally fair process due to an inability to obtain information material to a dispute." Principle 13, *Consumer Due Process Protocol*, Am. Arbitration Ass'n (1998), https://www.adr.org/media/x3mdzarl/consumer_due_process_protocol.pdf.

## III. CONCLUSION

For the foregoing reasons, CCC's Motion to Stay Pending Arbitration is **GRANTED**. This action is **STAYED** insofar as it pertains to claims against CCC.

**SO ORDERED.**

Dated: November 2, 2026

/s/ Angel Kelley
Hon. Angel Kelley